MAJOR *et al. v.* MAJOR *et al.*

(*Knoxville.* September Term, 1903.)

1. **YEAR'S SUPPORT. When assigned vests absolutely in the widow.**

Under our statute (Shannon's Code, section 4021), property when assigned to a widow for a year's support, vests absolutely in her. (*Post, pp.* 197-198.)

Case cited and approved: Vincent v. Vincent, 1 Heisk., 333-343.

2. **SAME. Same. Children of husband by former marriage, not entitled to division of. Case in judgment.**

Where a year's support had been assigned to a widow, and she, with her children, had gone to live with her father, and the husband's children by a former marriage had gone to live with his relatives, by and in pursuance of arrangements made by him just prior to his death, and as required by his poverty, the children of the former marriage are not entitled to have said year's support divided and a part thereof set aside for them.

3. **COSTS. Properly taxed against next friend, when.**

Costs are properly taxed against next friend, who, with full knowledge of the facts, institutes an action wholly without merit, and which can be of no practical benefit to his wards. (*Post, p.* 201.)

---

FROM KNOX.

---

Appeal from Chancery Court of Knox County.—Jos. W. SNEED, Chancellor.

THOMAS L. CARTY, for complainants.

111 Tenn—13

J. C. J. WILLIAMS, for defendants.

———

MR. JUSTICE WILKES delivered the opinion of the Court.

Complainants are minors, and file this bill by their grandfather, as next friend, to have a division of $150, which has been set apart to the defendant, Josephine Major, as a year's support for herself and her children. In the trial of the case below the chancellor dismissed complainants' bill, and denied them any relief. The court of chancery appeals sustained the chancellor, and complainants have appealed to this court, and assigned errors.

The facts as found by the court of chancery appeals are that John H. Major, in 1898, married the defendant Josephine Luttrell. He was then a widower, with four children by a former marriage. Two children were born to them. In the latter part of the summer of 1900, John H. Major, realizing that he was about to die from consumption, sent for his father-in-law, Joseph W. Luttrell, and requested him, when he died, to take back his daughter, the defendant Josephine, and one child, then born, and another soon to be born. Mr. Luttrell consented so to do; Major at the same time made arrangements with his near relatives to take the children by the former marriage and care for them. It is conceded by all the parties that it would have been impossible for the widow and children to make a living upon

the small and poor farm where they had resided with their father, and it was thought best to separate them in this manner.

Accordingly, after Major's death, his widow took their two young children to live at her father's house, and the other children by the former marriage, having received a division of all the personal property left by their father, went to live with his relatives selected by him.    After this the widow applied to the county court to have a year's support set aside to her, and a note calling for $150, due from Oliver Major, a brother of J. H. Major, was set apart as such year's support.    This note was given for J. H. Major's interest in the real estate of his father, Eli Major, the next friend in this case, and was all the property the father had.    The widow brought suit on the note, and recovered judgment before a justice of the peace for Knox county. Execution was stayed, and before the stay had expired Eli Major, the grandfather of the minor children by the first marriage, filed this bill in the chancery court to compel the widow to pay over a portion of this year's support for the benefit of these minor stepchildren, and to have an equitable division of the said fund, so that they might receive their portion.    This was upon the theory that the widow held the fund in trust for herself and all her children, and that each was entitled to his or her ratable share of it.

The complainants assign as error that the chancery court and the court of chancery appeals refused to set

apart or to pay over any of this fund for the benefit of the children of the first marriage. None of it has, so far, reached the widow, but it has all the while been tied up by this suit. The court of chancery appeals reports that it was attempted to be shown that the widow abandoned these children and the home, and took with her all of the available property; thus, as complainants charge, despoiling the home. That court reports that this is not true; that the separation was a matter of necessity; that it had been advised by the father before he died; that is would have been impossible for the widow to have remained upon the home place and make a living for herself and her own children, without regard to the stepchildren; and that there was an arrangement and understanding that these children by the first marriage should be taken care of and homes secured for them by their father's relatives.

So when the day for breaking up occurred, the three children by the first marriage were taken to the home of George Oliver Major, brother of the deceased father, with the understanding that Frederick, the youngest, should live with him and the grandfather, and that they two should furnish him with a home. Della, the eldest, was to be and was taken to the home of Mr. Trout, another relative of the husband, where she soon afterwards died. Vivia was to be taken and was taken by William Clapp, an uncle on the father's side, where she was given and now has a good home. That court reports that the two surviving children, Frederick and Vivia,

Major v. Major.

have good homes among poor, but respectable people, relatives of the father, and have been supported and kept by them. That court further reports that the widow and her two children, the children being mere infants, one two years old and the other a baby twelve days old, were taken to the home of the wife's father immediately after the husband's death, and have since been supported and kept up by them. The court further reports that there was a fair and amicable division of the exempt property, that the widow did not desert her stepchildren, and that there is no element of bad conduct on her part, and no abandonment or desertion or oppression involved in the case. That court was of the opinion that the year's support vests absolutely in the widow by the statute when it is assigned, and that she holds it for the benefit of herself and the family. They are further of opinion that the statute contemplates that the family shall be kept together, and that the widow shall be the head of it; and that she shall control the fund for the benefit of herself and family; and that in no case, unless one of gross injustice and wrong by the widow to helpless minor children, should there be any interference by the court with this fund in the hands of the widow. It appears that the father of the defendant Josephine is an old man, poor and feeble, and with but scanty means to support himself, the widow, and her minor children.

In the case of *Vincent* v. *Vincent,* 1 Heisk., 333, it appeared that two children of the widow by her first mar-

riage left her home, and went to live with one John Hunt; and the court said that it might be fairly inferred that the children were living with the widow at the time of the death of their father, and that they were taken away from the widow without her consent. The court held that under such circumstances it was error to direct any part of the year's allowance to be paid over to the guardian of the two children. The theory of the statute is that the year's allowance passes to the widow, and is under her absolute control for the benefit of herself and her children; and it would be error to direct that any part of it should be diverted into the hands of a guardian. The policy of the law is to keep the family together, at least for a year, and to make the widow the head of the family. The court further held, in effect, that to allow any part of the fund to be taken from her would be to annul the express provisions of the statute, and to declare that the money and effects are not the absolute property of the widow. Id. 341, 342.

We think that unquestionably these minor children by the first marriage had a right to share in this year's support so long as they were members of the mother's household, and that she, was under legal obligation to keep them as members of her household, if practicable; but if they, or either of them, should leave, or be taken from her custody, through choice or necessity, it would be contrary to the spirit of the law to require that a part of the fund should be set apart for them, and taken away from the control of the mother, and placed in the

hands of any other person.  If the children had been driven from home by the mother, a different case would be presented.  We do not think that the law contemplates that the fund shall be disturbed in the hands of the widow so long as she acts in good faith, and with no intention of defrauding or oppressing the children. While the widow might and should, out of this fund, contribute to the support of her stepchildren, if her necessities would permit her to do so, we do not think that the fund can be taken from under her control, and placed in the hands of another.  Even if the whole fund were in her hands, and all the children were living with her, she would still have her discretion as to how she would spend this money for the benefit of herself and the children; and the demands of her own children, who are mere infants, the oldest not being three years old and the youngest only a few weeks old, would be paramount to the rights of the complainants, who are fourteen and twelve years of age, respectively, and who could in some sort of fashion make a living for themselves.

We are unable to find any evidence that this widow has in any way oppressed the children of her husband by his first marriage, or will do so.  The record presents a story of domestic life that is pathetic and touching.  The father stricken with consumption, and standing in the presence of the grave, called around him his own relatives and those of his wife to make such disposition of his wife and children as his surroundings would justify.  He had but little to give them in the way of

property, but he desired to know that they would have homes, and be among friends.   It was agreed by all that the family could not be kept together, and they must be separated; his children going among his relatives to live, and hers with her to her father's home.   The baby was only a few days old when the father died, and when it was only twelve days old the separation came.   The family was broken up.   The widow and her two babies went to the home of her father, and the other children were divided out among his relatives as before stated. The separation was manifestly and concededly a matter of stern necessity, and the widow parted with her step-children with many tears and keen regret.   An impartial division of the meager household goods was had.   A stack of hay was set apart to pay the burial expenses. It was not enough by $2, and the widow paid this. Another small stack, moldy and in bad condition, was given her, as well as five bushels of very inferior corn. She also got two pigs.   The chickens were divided between her and the children.   There were two cows.   She took the smaller one, of least value, and the other went to the children.   The children took the two beds, a rocking chair, some picture frames, a trunk, some dishes, and a marble-top washstand.   The widow took a load of corn tops, an old harrow, and three old plows, harness for two mules, some canned fruit put up by herself, twenty-five pounds of flour, a half bushel of meal, a half barrel of kraut, half a keg of pickles, six gallons of vinegar, an old sewing machine worth $2, an old stove with

Major v. Major.

a few broken vessels, some knives and forks, one bed and clothing, and the children took the balance, amounting to no great deal; the whole aggregating about $50 to the widow and her babies, and about the same to the stepchildren.

The court of chancery appeals emphatically deny that the widow despoiled the home, but report that she did all her necessitous condition would permit. As before stated, we do not think it is either the spirit or letter of our statutes that this year's support of $150 should, any part of it, be taken from the widow's custody and control, in the absence of proof that she is oppressing her stepchildren. This is an unfortunate litigation. If this fund should be divided up between the widow and her two children and the two children by a former marriage, the amount received by each would be so small as to be practically of no benefit to any one of them. If they were living together, the aggregate fund, while furnishing a very meager support, might be sufficient to prove of some practicable benefit to the several members of the family. If, in addition to this, costs and counsel fees are to be paid out of this fund, it would be virtually consumed, and only a small pittance left for either the widow or the children. The chancellor and the court of chancery appeals taxed the next friend with the costs, and we are not disposed to disturb their decree upon this feature of the case.

The decree of the court of chancery appeals therefore is affirmed.